IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JEFFREY DAVID HALLADAY,                                    CV. 09-0046-BR

        Petitioner,

   v.                                                       OPINION AND ORDER

RICK COURSEY,

        Respondent.


C. RENEE MANES
Office of the Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR  97204

    Attorney for Petitioner


JOHN KROGER
Attorney General
KRISTEN E. BOYD
Oregon Department of Justice
1162 Court Street, NE
Salem, OR  97301

    Attorneys for Respondent

BROWN, Judge.

Petitioner, in custody of the Oregon Department of Corrections following conviction on his plea of guilty to one count of Murder and one count of Assault II, brings this Petition for Writ of Habeas Corpus (#2) pursuant to 28 U.S.C. § 2254.  He challenges the actions of the Oregon Board of Parole and Post-Prison Supervision ("Board").   For the reasons that follow, the Court DENIES the Petition.

## BACKGROUND

In 1988, pursuant to a plea agreement, Petitioner was convicted of Murder (Count 1) and Assault II (Count 3) for acts committed in 1987 against two separate victims.[1]   (#21, Resp. at 2.)   The court sentenced Petitioner as follows:

> [O]n Ct. I, MURDER, Defendant shall be committed to the legal and physical custody of the Oregon State Corrections Division for life with a ten (10) year minimum pursuant to ORS 163.115(3)(b) without the possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp, and in addition and consecutive to the foregoing minimum, a fifteen (15) year minimum pursuant to ORS 163.115(3)(c) without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp.

> [O]n Ct. III, ASSAULT II, Defendant shall be committed to the legal and physical custody of the Oregon State Corrections Division, Parole and Probation Department, for a period of ten (10) years with a five (5) year minimum pursuant to ORS 144.110.  This sentence shall run consecutively to the sentence imposed on Ct. I, Murder.

---

[1]Details of Petitioner's criminal acts and the terms of the plea agreement are found in Exhibit 104, filed under seal (docket #45.)

(#23, Resp. Ex. 101 at 3.)

On January 12, 1989, the Parole Board held a prison term hearing for Petitioner in accordance with Or. Rev. Stat. 144.120(1) (1987).[2]  (#21, Resp. at 2.)  Petitioner was present, accompanied by his sister, and presented mitigation evidence.  (#23, Resp. Ex. 103 at 19.)  The Board considered but rejected Petitioner's mitigation evidence, and considered and found aggravation evidence that (a) one victim was two and one-half years old and was left in the defendants care; (b) one victim had nine fractured bones; and (c) pursuant to Petitioner's guilty plea, a charge of Sodomy in the First Degree was dismissed.  (*Id.*)  The Board upheld the court imposed  30-year minimum sentence and established a parole release date of October 18, 2017.[3]  (*Id.*)  Future hearings would be

_____

[2]At the time Petitioner committed his crimes, ORS 144.120(1) provided:
> **Initial parole hearing; initial release date**
> **determination; delay of initial determination;**
> **notification of victim.** (1) For those prisoners
> sentenced to a term of imprisonment for life or for 15
> years or more, the Board shall conduct the parole
> hearing, and shall set the initial release date, within
> one year following admission of the prisoner to the
> institution.  Release shall be contingent upon
> satisfaction of the requirements in ORS 144.125.

ORS 144.120(1)(1987).

[3]Pursuant to ORS 163.115(3)(d)(1987), a unanimous vote was required to override the minimum term imposed by the court under ORS 163.115(b) & (c).  Three of the five members of the Board voted to override the 5-year minimum court sentence on the assault conviction.  All five members voted to sustain the 25-year minimum term imposed on the murder conviction, finding the minimum term an appropriate sanction and necessary for the protection of the public."  (#23, Ex. 103 at 19.)

scheduled in intervals pursuant to the governing administrative rules upon receipt of a positive recommendation from the institution where Petitioner was incarcerated.[4] (*Id.*)

On October 10, 1994, following receipt of a positive recommendation from Petitioner's institution, the Board held a personal review hearing for the period October 1987 to October 1992. (*Id.* at 22.) Citing the seriousness of the offense, the Board declined to reduce Petitioner's sentence or change his release date. (*Id.*) Subsequently, the Board held personal review hearings on January 19, 2000, to review the period October 1995 to October 1998; on June 12, 2002, to review the period October 1998 to October 2001; and on May 11, 2005, to review the period October 2001 to October 2004. (*Id.* at 24, 27, and 30.) The hearings were by video conference with Petitioner accompanied by his wife. (*Id.*) At these hearings, the Board declined to reduce Petitioner's sentence finding the minimums terms were an appropriate penalty and necessary to protect the public. (*Id.*)

Petitioner requested administrative review of the Board's May 2005 decision to deny a reduction in sentence, alleging there was

---

[4]Under OAR 255-40-005(1), petitioner was entitled to personal review hearings after serving five years of his sentence as follows: "Personal review shall be conducted after the prisoner has served five (5) years of his prison term and every three (3) years thereafter, starting with the date the prisoner's sentence begins to run. Such review will be conducted to determine the progress of the prisoner and whether such progress is exceptional as to warrant a reduction in the prison term." (#21, Resp. at 7 n. 3, and 8-9.)

insufficient evidence to support a finding that the minimum terms
were necessary to protect the public because he had done everything
possible to reform himself while in prison. (*Id.* at 32.) He also
alleged the Board's action violated his right to equal protection
when it failed to reduce his sentence. (*Id.* at 33.) The Board
issued a written Administrative Review Response ("ARR") concluding:
"Board action is supported by substantial evidence in the record[;]
the additional information is not pertinent to the board action[;]
Board action is consistent with rules or policies[;] Board action
is not in violation of statutes and/or constitutions." (*Id.* at 32,
ARR 1.) Petitioner filed four requests to reopen and reconsider
ARR 1. In a written response, the Board denied the requests. (*Id.*
at 35, ARR 2.) Petitioner filed a request to reopen and reconsider
ARR 2. In a written response, the Board denied the request. (*Id.*
at 34, ARR 3.)

On March 13, 2007, after his request for reconsideration of
ARR 2 was denied, Petitioner sent a letter to the Chairperson of
the Board requesting a "rehabilitation/parole-eligibility hearing
such as that granted to aggravated murder defendants under ORS
163.105 (2) and (3)." (*Id.* at 37.) He claimed that to deny him
such a hearing "would result in my being subjected to
disproportionate (cruel and unusual) punishment." (*Id.*) He
asserted the personal review hearings he received were not an
adequate replacement for the rehabilitation/parole-eligibility

hearings because the burden of proof was more onerous; the personal review hearings did not provide the due process and equal protection available to those convicted of aggravated murder in their rehabilitation/parole-eligibility hearings; and requiring him to serve 20 years before getting such a hearing was subjecting him to "the same punishment as aggravated murder defendants." (*Id.*) In a letter dated April 16, 2007, Board staff denied Petitioner's request for a hearing, stating:

> As you know, after holding a prison term hearing, the Board upheld the 30-year minimum and set your [projected parole release date or parole review date] for October 18, 2017. That decision was memorialized in Board Action Form (BAF) #1, dated January 12, 1989. Additionally, in the intervening years, you have had several personal review hearings, which have considered whether a reduction in your prison term was appropriate under the circumstances. Thus, because you already have a projected parole release date--October 18, 2017--there is no reason to schedule you for a rehabilitation/murder review hearing, which is used for eligible offenders to determine whether they receive a projected parole release date. More significantly, there is no authority for the Board to hold a rehabilitation/murder review hearing with you because, as explained above, you already have a projected parole release date.
>
> Finally, you are eligible, upon receipt of a positive recommendation from the institution, for a Personal Review hearing in November 2007.

(*Id.* at 39, brackets in original.)

Petitioner filed an administrative review request, alleging that the Board's denial of a parole eligibility hearing was in violation of statutes and constitutions because murder defendants such as himself were being forced to serve 25 years before being eligible for parole and privileges afforded to aggravated murder

defendants after 20 years.    (*Id.* at 40-42.)    In its written response, ARR 4, the Board denied Petitioner's request for a hearing concluding "Board action is consistent with rules or policies" and "Board action is not in violation of statutes and/or constitutions."    (*Id.* at 44-45.)    The Board noted that although Petitioner was correct that a person convicted of aggravated murder was entitled to a murder review hearing anytime after 20 years, there was no guarantee the person would be found likely to be rehabilitated, and even if the finding were made, that the offender would be released immediately.    (*Id.*)

Petitioner appealed the Board's ARR 4 to the Oregon Court of Appeals, presenting the following questions:

1.    Did the Board erroneously interpret Petitioner's parole eligibility under ORS 163.115(3)(b) and (c)(1987) and err when it denied him a rehabilitation/parole-eligibility hearing like that which is granted to aggravated murder offenders under ORS 163.105 and OAR 225-032-0025 based on the Board's conclusion that one wasn't necessary because Petitioner "is already eligible for parole"?

2.    Did the Board err, and subsequently begin subjecting Petitioner to cruel and unusual, disproportional punishment as of October 18, 2007, when the Board interpreted ORS 163.105 and related case law and denied Petitioner the same kind of hearing afforded to aggravated murder offenders under ORS 163.105 based on the Board's conclusion that Petitioner's being forced to serve a 25-year minimum for murder would not subject him to cruel and unusual, disproportionate punishment if he were denied a hearing.

3.    Did the Board err and deny Petitioner his rights of due process, equal protection and equal privileges when the Board denied Petitioner the chance to

> obtain release from service of his murder sentence
> through the same kind of hearing afforded
> aggravated murder offenders under ORS 163.105 and
> OAR 155-032-0025?

(#23, Ex. 108, at 2-3.)    Subsequent to the Board filing a

responsive brief, Petitioner filed a Reply to the Board's response,

restating the first two questions presented as follows:

> 1.    Is Petitioner constitutionally entitled to a murder
> review hearing like that which is granted to
> aggravated murder offenders under ORS 163.105?
>
> 2.    Is Petitioner being subjected to cruel and unusual,
> disproportionate punishment by being required to
> serve a 25-year minimum for murder without the
> possibility of parole?

(#23, Resp. Ex. 110 at 1.)    Petitioner argued the Board ignored the

controlling case for the determination of question Two (2), *State

v. Shumway*, 291 Or. 153, 630 P.2d 796 (1981) (holding ORS

163.115(5) (1979) in violation of Art. I, § 16 of the Oregon

Constitution which requires "all penalties shall be proportioned to

the offense.")[5]    (*Id.* at 1.)    The Oregon Court of Appeals affirmed

the Board decision without opinion, and the Oregon Supreme Court

denied review.    (#23, Exs. 113 and 112.)

Petitioner filed the instant federal habeas petition raising

two grounds for relief:

---

[5]In 1978, ORS 163.115(5) was amended by a ballot measure
passed by voters, which resulted in the minimum sentence to be
served before parole eligibility for aggravated intentional
homicide under ORS 163.05 to be less than the 25-year minimum to
be served before parole eligibility for an unaggravated
intentional homicide. *Shumway*, 291 Or 153, 801-802.    The Oregon
Supreme Court found the statute violated the Oregon constitution.

Ground One: Petitioner is currently being subjected to cruel and unusual punishment for murder, in violation of the 8th and 14th Amendments of the U.S. Constitution.

Ground Two: Denial of Due Process and Equal Protection in violation of the Fourteenth Amendment of the U.S. Constitution.

(#2, Pet at 6-7.)  Respondent asserts habeas relief is unavailable because the state court decisions denying relief are neither contrary to nor an unreasonable application of United States Supreme Court precedent, and the claims are without merit.  (#21, Resp. at 5; #60, Reply at 1.)  The Court agrees.

## DISCUSSION

### I.    Standards of Review

A habeas petitioner is not entitled to relief in federal court unless he demonstrates that the state court's adjudication of his claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The terms "contrary to" and "unreasonable application" have independent meanings. *Sarausad v. Porter*, 479 F.3d 671, 676 (9th Cir. 2007).  A state court decision is "contrary to" clearly established federal law if it is "in conflict with", "opposite to" or "diametrically different from" Supreme Court precedent.

*Williams, v. Taylor*, 529 U.S. 362, 388 (2000). An "unreasonable application" of clearly established Supreme Court law occurs when "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the . . . case." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) *cert. denied*, 126 S. Ct. 484 (2005)(citing *Williams,* 529 U.S. at 413). "A federal court making an 'unreasonable application' inquiry should ask whether the state court's application of federal law was objectively unreasonable." *Saurasad*, 479 F.3d at 676-77 (citing *Williams*, 529 U.S. at 409). Thus, federal courts apply a "highly deferential standard for evaluating state-court rulings." *Id.* at 676 (internal citations omitted).

"'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lambert*, 393 F.3d at 974. The last reasoned decision by the state court is the basis for review by the federal court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002). When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). Nevertheless, the federal court defers to the state

court's ultimate decision.  *Pirtle v. Morgan*, 313 F.3d 1160, 1167
(9th Cir. 2002).    To the extent a petitioner challenges a state
court's interpretation of state law, the claim is not cognizable on
federal habeas review.  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990);
*Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985).

## II.  <u>Analysis</u>

The Oregon court decisions denying Petitioner relief do not
provide reasoning for those decisions.  Accordingly, the Court will
conduct an independent review of the record to determine if the
Oregon courts erred in the application of clearly established
Federal law.

### A.    *Ground One*

Petitioner asserts that he is being subjected to cruel and
unusual punishment because he "has now served more time for Murder
than what is required for aggravated murder."  (#2, at 6.)  Through
counsel he argues "his sentence is disproportionate and thus Cruel
and Unusual and in violation of the Eighth Amendment when viewed in
connection with the treatment of other individuals convicted of far
more serious crimes."  (#28, at 10.)  A review of the record,
including Respondent's Exhibit 104 filed under seal, leads the
Court to conclude Petitioner's assertion that he was convicted of
a less serious crime than someone convicted of aggravated murder
because he "was convicted only of ordinary murder" misrepresents
the facts.  (#28, at 10.)

Petitioner's crimes against his two victims were heinous. (Respt.'s Ex. 104, filed under seal, at 6, 7, and 12.) Petitioner entered into a plea agreement which allowed him to plead guilty to Murder and Assault II, with dismissal of the charge of Sodomy in the First Degree. (Respt.'s Ex. 103, at 19.) At the time of his plea, Oregon law provided for either the death penalty or a 30-year minimum sentence without parole for Aggravated Murder. Or. Rev. Stat. § 163.105 (1987). A defendant convicted of "ordinary" Murder was subject to a 10-year minimum without parole and, at the court's discretion, a possible additional 15-year minimum without parole. Or. Rev. Stat. § 163.115 (1987). The court sentenced Petitioner to the 10-year minimum plus the additional 15-year minimum without parole. Petitioner cannot now complain that his sentence is disproportionate to that imposed for aggravated murder when his sentence reflects his plea agreement. In any event, Petitioner's sentence is not grossly disproportionate to his crimes, and thus not cruel and unusual punishment.

"[I]n assessing a punishment selected by a democratically elected legislature against the constitutional measure, [the Court] presumes its validity." *Gregg v. Georgia*, 428 U.S. 153, 175 (1976). Under established Supreme Court precedents, the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing v. California*, 538 U.S. 11, 20 (2003) (upholding 25-year sentence for shoplifting under three-strikes law); *Harmelin v.* Michigan, 501 U.S. 957 (1991) (upholding

life without possibility of parole for first time offense of drug possession); *Gregg*, 428 U.S. at 187 (upholding the death penalty for the crime of murder); *United States v. Van Winrow*, 951 F.2d 1069 (9th Cir. 1991) (upholding life without possibility of parole for possession of 151.9 grams of crack cocaine).

To determine whether a sentence is grossly disproportionate to a particular crime,

> [a] court must begin by comparing the gravity of the offense and the severity of the sentence. [I]n the rare cases in which [this] threshold comparison ... 'leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions.  If this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual.

*Graham v. Florida*, 130 S.Ct. 2011, 2022 (2010) (citing *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991)(opinion of Kennedy, J.)).

Petitioner argues "the refusal to grant parole consideration to ordinary murders under the same rubric as aggravated murders constitutes disproportionate, and thus cruel and unusual, punishment." (#28, at 9.)  In doing so, Petitioner compares parole consideration for classifications of murder assuming that the title of an offense is determinative of its gravity.  But the title of an offense is not determinative of its gravity.  The facts of a case are determinative of the gravity of the offense and inform a prosecutor's decisions with respect to the charging instrument, the offering of a plea, and the sentencing recommendation.  And the

13 - OPINION AND ORDER

gravity of the offense must be compared to the severity of the sentence as a threshold matter in determining whether a sentence is disproportionate. A comparison of a defendant's sentence to that received by other defendants occurs only in "the rare cases" when the comparison of the gravity of the offense to the severity of the sentence suggests disproportionality. That is not the case here. Moreover, "[t]he Eighth Amendment does not require harmonization among sentences imposed by different courts." *United States v. Lillard*, 929 F.2d 500, 505 (9th Cir. 1991).

Petitioner has not shown that his sentence is disproportionate to the crimes for which he is imprisoned. The Court, therefore, concludes that the Oregon courts' adjudication rejecting Petitioner's Eighth Amendment claim is neither contrary to, nor an unreasonable application of United States Supreme Court precedents. Accordingly, habeas relief on Ground One is precluded.

**B.   *Ground Two***

Petitioner asserts the refusal to grant "ordinary" murderers the same parole consideration as aggravated murderers under Or. Rev. Stat. § 163.105 violates due process and equal protection. The Court will address Petitioner's due process and equal protection arguments separately.

/ / /

(1)  Due Process

As Petitioner notes, while this action was pending, the Supreme Court issued *Swarthout v. Cooke*, 131 S.Ct. 859 (Jan 24, 2011) which governs federal habeas review of claims alleging violations of due process stemming from parole board proceedings. Under *Swarthout*, when a State has created a liberty interest in parole consideration, federal review of parole board decisions is available to determine whether an inmate was afforded *procedural* due process.  131 S.Ct. at 862.  Procedural due process consists of: (1) an opportunity to be heard and (2) a statement of the reasons why parole was denied.  *Id.* (citing *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 12 (1979)). Whether an inmate was afforded procedural due process is "the beginning and the end of the federal habeas courts' inquiry." *Id.* To the extent a petitioner challenges a state court's interpretation of its parole laws, the claim is not cognizable on federal habeas review.  *Swarthout*, 131 S.Ct. at 861; *Lewis*, 497 U.S. at 780 ("[F]ederal habeas corpus relief does not lie for errors of state law[.]"); *Middleton*, 768 F.2d at 1085 (same).

Petitioner does not contend that he was denied either an opportunity to be heard or a statement of the reasons why parole was denied, nor could he.  The record is replete with evidence of hearings Petitioner received before the Board, of written notices of Board decisions from those hearings, and of correspondence

between Petitioner and the Board with respect to his seeking the type of hearing that is available to aggravated murderers. Petitioner received procedural due process in the parole proceedings and, therefore, under *Swarthout* his claim of a violation of due process cannot stand.

(2)  Equal Protection

Petitioner alleges his right to equal protection has been violated because, as an "ordinary" murderer, he is not entitled to the same parole procedures as those available to someone convicted of aggravated murder.  He contends "[t]he Board never articulated a rational basis why individuals who are in the class of ordinary murderers like [Petitioner] are treated more harshly than individuals who are in the class of aggravated murderers."[6]  (#61, at 9.)  The Court finds Petitioner's argument to be without merit.

Under the Equal Protection Clause of the 14th Amendment, a state may not create a classification that disadvantages a suspect class or that impinges upon the exercise of a fundamental right unless its purpose is precisely tailored to serve a compelling governmental interest.  *City of Richmond v. J.A. Croson Co*, 488 U.S. 469, 493 (1989) (classification based on race warrants strict scrutiny).  Similarly, a state may not create a classification that disadvantages a quais-suspect class unless its purpose advances important governmental objectives and is substantially related to

---

[6]From Petitioner's arguments, the Court concludes Petitioner is not raising a "class of one" Equal Protection claim.

the achievement of those objectives. *United States v. Virginia*, 518 U.S. 515, 533 (1996) (heightened review standard for classification based on gender). A state engendered classification that implicates neither a suspect or quasi-suspect class and does not burden a fundamental right will not be struck down so long as it is rationally related to a legitimate state interest. *Kimel v Florida Bd. of Regents*, 528 U.S. 62, 83 (2000) (rational basis review for age classification); *Heller v. Doe*, 509 U.S. 312, 319-20 (1993) ("classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity").

In this action, no suspect class or quasi-suspect class is at issue and no fundamental right is burdened by the Oregon parole rubric. *See Greenholtz*, 442 U.S. at 7 ("[N]o constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *see also Ragland v. Hundley*, 79 F.3d 702 (8th Cir. 1996) (felony murderers are not a suspect class within class of murderers as would support equal protection violation). Therefore, the Court applies rational basis review in evaluating the Oregon parole rubric at issue in Petitioner's claim that his right to equal protection has been violated.

Under rational basis review, "a classification 'must be upheld against equal protection challenge if there is any reasonably

conceivable state of facts that could provide a rational basis for the classification.'" *Heller*, 509 U.S. at 320 (quoting *FCC v. Beach Communications Inc.*, 508 U.S. 307, 313 (1993)). "[A] legislature ... need not actually articulate at any time the purpose or rationale supporting its classification" and "[a] State ... has no obligation to produce evidence to sustain the rationality of a statutory classification." *Id.* (internal quotations and citations omitted.) Thus, to prevail on his equal protection claim, Petitioner must show that there is no conceivable state of facts that could provide a rational basis for the parole rubric he challenges. The Court finds he has failed to do so.

At the time Petitioner committed his crimes, the aggravated murder statute provided:

> **163.105 Death or life imprisonment for aggravated murder; review by State Board of Parole.** Notwithstanding the provisions of ORS chapter 144, ORS 421.165 and 421.450 to 421.490:
>
> (1) When a defendant is convicted of aggravated murder as defined by ORS 163.095, the defendant shall be sentenced to death or life imprisonment pursuant to ORS 163.150. If sentenced to life imprisonment, the court shall order that the defendant shall be confined for a minimum of 30 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp.
>
> (2) At any time after 20 years from the date of imposition of a minimum period of confinement pursuant to paragraph (c) of subsection (1) of this section, the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time. The proceeding shall be conducted in the manner prescribed for a contested case hearing under ORS 183.310 to 183.550 except that:

(a) The prisoner shall have the burden of proving by a preponderance of the evidence the likelihood of rehabilitation within a reasonable period of time; and

(b) The prisoner shall have the right, if the prisoner is without sufficient funds to employ an attorney, to be represented by legal counsel, appointed by the board, at board expense.

(3) If, upon hearing all of the evidence, the board, upon a unanimous vote of all of five members, finds that the prisoner is capable of rehabilitation and that the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release. Otherwise the board shall deny the relief sought in the petition.

(4) Not less than two years after the denial of the relief sought in a petition under this section, the prisoner may petition again for a change in the terms of confinement. Further petitions for a change may be filed at intervals of not less than two years thereafter.

ORS 163.105 (1987).  The Murder statute under which Petitioner was

convicted and sentenced provided, in relevant part:

**163.115 Murder; affirmative defense to certain felony murders; sentence of lime imprisonment required; minimum term.**

        * * *

(3)(a)  A person convicted of murder shall be punished by imprisonment for life.

(b) When a defendant is convicted of murder under this section, the court shall order that the defendant shall be confined for a minimum of 10 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp.

(c) When a defendant is convicted of murder under this section, the court, in addition to the minimum required by paragraph (b) of this subsection, may order that the defendant shall be confined for a minimum term of up to an additional 15 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp.

(d) The minimum term set forth in paragraph (b) or (c) of this subsection may be set aside by a unanimous vote of the State Board of Parole.

19 - OPINION AND ORDER

ORS 163.115 (1987).  The parole process was defined, in relevant

part, as follows:

> **144.110 Restriction on parole of persons sentenced to
> minimum terms.**  (1) In any felony case, the court may
> impose a minimum term of imprisonment of up to one-half
> of the sentence it imposes.
>
>> (2)  Nothwithstanding the provisions of ORS
>> 144.120 and 144.780:[7]
>> (a) The board shall not release a prisoner on
>> parole who has been sentenced under
>> subsection (1) of this section until the
>> minimum term has been served, except upon
>> affirmative vote of at least four members of
>> the board.
>> (b) The board shall not release a prisoner on
>> parole who has been convicted of murder
>> defined as aggravated murder under the
>> provisions of ORS 163.095, except as provided
>> in ORS 163.105.

Or. Rev. Stat. Chapter 144 (1987).

Oregon's courts recognize legislative judgment is reflected in

criminal laws.  *State v. Beebe*, 67 Or.App. 738, 741 680 P.2d 11

(Or.App. 1984)("The task of the legislature in drafting criminal

laws is to make reasoned decisions concerning the social harm of

particular conduct.  The criminal laws are replete with examples of

such legislative judgment.")  Oregon's murder statutes are drafted

to address crimes committed under varying circumstances.  In the

case of "ordinary" murder, the statute clearly gives the sentencing

---

[7]ORS 144.120 addressed the parole process with respect to
the initial parole hearing; initial release date determination;
delay of initial determination; notification of victim.  ORS
144.780 addressed the duties of the Advisory Commission on Prison
Terms and Parole Standards and specified guidelines for the
commission regarding its duty to propose rules on duration of
imprisonment.

court discretion to impose a much harsher sentence by providing for an additional 15-year minimum sentence in addition to the 10-year minimum. This sentencing scheme reflects the legislature's recognition that the facts of an ordinary murder may warrant significantly greater punishment than the 10-year minimum under Or. Rev. Stat. § 163.115(b), and delegates the authority to impose greater punishment to the sentencing court. The Court rejects Petitioner's contention that an aggravated murder conviction necessarily reflects commission of a more serious offense warranting greater punishment than an "ordinary" murder. As this case demonstrates, the title of the offense of conviction is not determinative of the seriousness of the crime. Conduct can be charged based on decisions by the prosecutor, taking into consideration many factors, and the heinous facts of an "ordinary" murder can prompt the sentencing court to impose a punishment as severe, or more severe than the punishment imposed under the aggravated murder statute.[8] This does not offend the Equal Protection Clause of the U.S. Constitution. Furthermore, Petitioner's success in obtaining a plea does not mean there is no rational basis for him not receiving the same "privileges" as an aggravated murderer.

The Supreme Court has long counseled deference to state legislatures with respect to constitutional challenges to criminal

---

[8]Respt.'s Ex. 104, filed under seal, presents the facts of this case with pp. 6, 7, 12 of particular relevance.

sentencing.  *Gregg*, 428 U.S. at 175-76 ("The deference we owe to
the decisions of the state legislatures under our federal system is
enhanced    where    the    specification    of    punishments    is
concerned.")(internal citation omitted); *Williams v. Illinois*, 399
U.S. 235 (1970) (states have wide latitude in fixing punishments
for state crimes).  The Supreme Court has also been clear that the
Constitution does not preclude differences in punishment based on
the circumstances of the crime.

> "The Constitution is not offended by inconsistency in
> results based on the objective circumstances of the
> crime.  Numerous legitimate factors may influence the
> outcome of a trial and a defendant's ultimate sentence,
> even though they may be irrelevant to his actual guilt ."
> *****
> [S]entencing in state courts is generally discretionary,
> so a defendant's ultimate sentence necessarily will vary
> according to the judgment of the sentencing authority."

*McCleskey v. Kemp*, 481 U.S.279, 307 n.28 (1987); *Williams*, 399 U.S.
at 243 ("The Constitution permits qualitative differences in meting
out punishment and there is no requirement that two persons
convicted of the same offense receive identical sentences."); *see
also Tinger v. Texas*, 310 U.S. 141, 147 (1940)("The Constitution
does not require things which are different in fact or opinion to
be treated in law as though they were the same.")  Because
Petitioner has not shown that the Equal Protection Clause precludes
the State from distinguishing between murderers in meting out
punishment, including parole eligibility, he has not shown that the
state court adjudication of his claim was contrary to or an

unreasonable application of established Federal law.[9]  Accordingly,
habeas relief is precluded.

### CONCLUSION

Based on the foregoing, the Petition for Writ of Habeas Corpus
(#2) is denied.   The court declines to issue a Certificate of
Appealability on the basis that Petitioner has not made a
substantial showing of the denial of a constitutional right
pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 22nd day of September, 2011.

_____
ANNA J. BROWN
United States District Judge

_____

[9]Petitioner's argument that the Board and reviewing Oregon
courts misinterpreted the state parole law does not change this
conclusion.

23 - OPINION AND ORDER